CHARLES C. BALDWIN, ADM'R, v. GEORGE N. FLETCHER.

*Specific performance of individual stipulations.*

A bill will not lie for the specific performance of particular stipulations, to be separated and dealt with apart from the rest of the contract, if they do not distinctly appear by the contract to stand by themselves wholly unaffected by any others.

A party to a contract who insists upon parts of it must abide by it in its entirety.

Where a compromise contract is so drawn that what is to be done by one party is the consideration for that which is to be done by the other, specific performance of any portion of it cannot be had without bringing all the parties in interest before the court, so as to give opportunity for disposing of the whole controversy. And where that was not done, the bill was dismissed, but without prejudice.

Appeal from Alpena.    Submitted June 14.    Decided June 21.

BILL for specific performance.    Complainant appeals. Bill dismissed without prejudice.

*J. D. Holmes, L. Prentiss* and *W. S. Tennant* for complainant.    In this case the contract was not entire and indivisible, or its stipulations dependent, as to the partition of the lands, or the application of the payments, on the mortgage and the contract:  2 Pars. Cont. 517; *Rorabacher v. Lee* 16 Mich. 173; *Dibol v. Minott* 9 Ia. 406; *Perkins v. Hart* 11 Wheat. 237; *Miner v. Bradley* 22 Pick. 457; *Robinson v. Green* 3 Met. 159; *Adams v. Hill* 16 Me. 215; *Rogers v. Kneeland* 13 Wend. 114; *Stacey v. Randall* 17 Ill. 467; *Norton v. Kearney* 10 Wis. 443; *Elmore v. Hoffman* 6 Wis. 71.

*J. B. Clayberg* and *Hanchett & Stark* for defendant Fletcher.    Where several promises are made for an entire consideration, the promises do not become severable:  1 Story Cont. §§ 21, 24 a; *Gray v. Hinton* 12 Rep. 3; *Barker v. Reagan* 4 Heisk. 590; *Whitcher v. Hall* 5 B. & C. 269; *Miner v. Bradley* 22 Pick. 459; *Clark v. Baker* 5 Met. 460; *Baker v. Higgins* 21 N. Y. 397; *Bigg v. Wisking* 14 C. B. 195; *Butler v. Rice* 17 Hun 406; *Allen v. McKibbin* 5 Mich. 449; *Keystone L. & S. Co. v. Dole* 43 Mich. 370; *Ætna Ins. Co. v. Resh* 44 Mich. 55; *Elliott v. Thomas* 3 M. & W. 170; *Scott v. Eastern Counties R. R.* 12 M. & W. 33; *Quigley v. De Haas* 82 Penn. St. 267; *Carmalt v. Platt* 7 Watts 318; *Stansbury v. Fringer* 11 Gill. & J. 149; *Coos Bay Wagon Co. v. Crocker* 7 South. L. Rev. 157; *Batre v. Simpson* 4 Ala. 305; *Scheland v. Erpelding* 6 Ore. 258.

COOLEY, J. The bill of complaint in this case states that on March 20, 1874, one George Prentiss executed to the defendant Fletcher a mortgage of land in Alpena to secure the payment of $6500 and interest in four equal annual payments, the first to come due May 1, 1876.

That on April 2, 1874, Prentiss conveyed the mortgaged property to the Alpena Lumber Company, subject to the mortgage, which the lumber company assumed and agreed to pay.

That on September 13, 1876, Fletcher and the trustees of the Alpena Lumber Company entered into an agreement, a copy of which is given in the margin,* whereby Fletcher

---

* Memorandum of agreement made this thirteenth day of September, 1876, by and between George N. Fletcher of Detroit, Michigan, of the first part and Loren Prentiss and Perry Prentiss, as trustees and the Alpena Lumber Company parties of the second part, witnesseth :

That whereas the said Fletcher is the sole owner of certain pine land situated in township thirty-two (32) north, of ranges three (3) and four (4) east, in the State of Michigan, and is also the owner in common with James Campbell, and William White and William Griffin, of certain other lands in said towns and ranges.

And, whereas, the said Loren and Perry Prentiss, as said trustees, are the owners of the rights of said Campbell, White and Griffin in and to all the Campbell, White and Griffin lands, so called.

And, whereas, the said second parties and George Prentiss have caused to be cut from off a portion of such lands as owned solely by said Fletcher, and also from off a portion of the other lands above named the pine timber therefrom.

A partition of such lands so held in common is desired by the parties, and it is therefore agreed that a partition of such lands be made by three disinterested persons, one to be chosen by said first party and one by said second parties, and the two so chosen to elect a third.

That in making such partition the quantity and quality of the timber and the location of the land is relatively considered.

That the lands so cut upon and over by George Prentiss or said second parties or any persons for them, be set off to the said trustees at their value estimated, with the timber heretofore standing, and as if the same were now thereon, as a part of their share of such lands.

That said Fletcher convey to said trustees all of the lands so owned by him solely which have been cut over or upon by George Prentiss or said second parties.

That in exchange for the same, the said trustees are to convey to him, said Fletcher, out of the lands which may be set off to them as aforesaid, lands of equal value, quality, quantity and location considered, to those of said Fletcher so cut over as aforesaid, estimated with the timber standing thereon, and as if the same had not been cut over. The persons so appointed to make said partition to determine and designate such lands, also such partition and division to be made at once, and the parties are to release and convey to each other the lands set off to each respectively.

The said Alpena Lumber Company also agrees to purchase of said Fletcher what is known and called the "lake front," being in the front

agreed to convey to the company for the sum of one thousand dollars, certain premises in Alpena, "being the Lake Front so called." That the company paid Fletcher $1144.28 by lumber of that value, and $1800 by logs of that value, of which $600 was to apply in payment for harbor dues under said contract, $1000 to apply in payment for said lake front, and the balance to apply on said mortgage.

That said agreement was made to compromise and settle certain differences between said Fletcher and said company, and that said claim for harbor dues was one of said matters of difference, and that said company did not consider the same a valid claim, and paid the same solely in consideration

---

of and adjoining the mill property of said company, and also in front of Water street, extended in the city of Alpena, and pay him therefor the sum of one thousand dollars in cash, and said company also agrees to pay said Fletcher in cash the sum of six hundred dollars in full settlement of certain harbor dues, claimed to be due to the "Alpena Harbor Improvement Company," from said lumber company.

Said Lumber Company and its successors or assigns in the ownership of the mill property are also to have a right of way over what is called "Water street" extended in said city to said "lake front," and are to keep that portion of said so-called street which may be used by it, in good, sanitary and clean condition.

Said Fletcher is to execute and deliver to said Lumber Company the necessary conveyance of said lake front upon the payment of said one thousand dollars, reserving, however, the right to treat with the United States Government for any river front for dock or light-house purposes, with such depth from the river front as it may require, and to receive all compensation made therefor.

All suits commenced by either of said parties against the other, and the suit of said Fletcher against George Prentiss, are to be discontinued, and any money or property taken in the replevin suits now in the hands or possession of said Fletcher, which belongs to said second parties to be returned or applied first to the payment of said sum of sixteen hundred dollars for said lake front and harbor dues, and, secondly, upon whatever may be due said Fletcher upon the mill property mortgage, and the balance to be returned to said Lumber Company.

A certain drain, extending from the "Fletcher House" across the property of said Lumber Company is owned and is to be kept up by the parties in common.

Said Fletcher is to transfer and assign to said Lumber Company and does hereby transfer any and all claims which he may have against George Prentiss or other parties for any of the timber cut as aforesaid, and hereby releases the said Company from any and all such claims, in consideration of such partition and division made.

[Signed]      GEORGE N. FLETCHER,
ALPENA LUMBER Co.
Per L. Prentiss, President
L. PRENTISS,     }
PERRY PRENTISS, } Trustees.

of the settlement of all the other matters of difference embraced in and settled by said agreement.

That on November 13, 1877, the assignees of said Lumber Company, being then the owners of " said premises and mill property," conveyed the same to Truman Dunham, the intestate, subject to the payment by him of the balance remaining unpaid on said mortgage, and said Dunham on that day paid to Fletcher, on the mortgage, the sum of $2734.43.

That Fletcher refuses to apply on the mortgage the balance of the value of said lumber and logs, and insists upon his right to collect the mortgage without such application. He also refuses to apply said $1000 upon the contract for said lake front.

And the bill prays that the amount of the payments "made on said mortgage may be ascertained and the balance unpaid thereon be fixed by the court," and "that said Fletcher may be required to execute and deliver to your orator or to Robert G. Churchill, to whom your orator has agreed to convey the same, a good and sufficient deed of conveyance of the said lake front," and that complainant may have other and further relief.

An answer was filed to this bill, and the case has been heard on pleadings and proofs. The decree made combines this case with several others, and need not be further mentioned.

That the bill made no case for any relief whatever is very apparent.

Complainant does not pretend that his intestate was assignee of the contract of September 13, 1876, and his bill is not filed upon any such assumption. What he claims is that he became purchaser of the equity of redemption in the land covered by the Fletcher mortgage, and also of such rights as the lumber company acquired by the contract, in the lake front, and in consequence was entitled to have applied on the mortgage and on the purchase of the lake front the value of the logs and lumber which Fletcher, by the contract, agreed should be applied. In effect, complain--

ant contends that his intestate acquired by conveyances from the assignees of the lumber company certain interests in particular stipulations contained in the contract of September 13, 1876, and he prays that these, separated and dealt with separately from the rest of the contract, be specifically performed in his favor.

To justify any such relief it would be essential that the stipulations in question should clearly and distinctly appear by the contract to stand by themselves, independent of and wholly unaffected by any others; for if the contract is an entirety it would not be pretended that one party could select out particular provisions for enforcement while ignoring the remainder, or that he could assign to a third party the right to such partial enforcement. The party insisting upon parts of an entire contract must abide by it in its entirety.

That the particular stipulations which complainant seeks to enforce are not independent is manifest on a reading of the contract. It is on its face a compromise contract; and what is to be done by one party is the consideration for that which is to be done by the other. The bill itself concedes this as to the harbor dues, but the concession was not needed when the contract was so plain. In particular the stipulation for the application of the value of the lumber and logs was plainly in consideration of the proposed partition; and if the one should fall through the other would go with it.

No specific performance could be had of any portion of such an agreement without bringing all the parties in interest before the court, so as to give opportunity for disposing of the whole controversy. That has not been done in this case. It follows that the bill should have been dismissed. It will now be dismissed with costs of both courts, but without prejudice.

The other Justices concurred.