W. C. HUDSON v. U. H. COZART, W. P. ANDERSON, S. W. SMITH, J. C. EAGLES, W. G. CARR, ET AL.

(Filed 3 March, 1920.)

**1. Tenants in Common—Options—Contracts—Tender.**

Ordinarily tenants in common are not, merely from that relationship, authorized to make agreements or receive notices substantially affecting the estate or interest of each other in the common property, but when all of them have entered into a joint and binding agreement conferring a purchase option on a third person, such an instrument will constitute one the agent of the other for the purpose of a tender, which will turn the agreement into a bilateral contract, especially when their executed agreement, from its language and purport, contemplates an indivisible contract to be performed in its entirety.

**2. Same—Partial Consideration.**

An option given by tenants in common on their lands to be exercised by the grantee upon the payment of a specified sum of money, and erect thereon a redrying plant for the coming tobacco season for that year, necessitates his holding the title to the entire property, in order to its full performance, and his unaccepted tender of the purchase price alone, is not of the full consideration he has agreed to pay, and will not entitle him to specific performance of the contract as a bilateral agreement.

**3. Contracts— Options— Tender— Full Consideration— Equity— Specific Performance.**

A grantee of an option of lands is required to aver and prove performance on his part as required by his contract, and where he has duly tendered the money consideration within the specified time, and as a part of the consideration for the contract, he is also required to erect a redrying plant upon the lands, in order to maintain his suit for specific performance, he must not only show his readiness, willingness, and ability at any time to make good his tender of the money refused, but also to erect a redrying plant according to his agreement.

**4. Contracts—Options—Performance in Part—Specific Performance— Equity.**

A contract for the purchase of land indivisible in its nature, and to be performed in its entirety, may not be specifically enforced partially, or as to its separate provisions.

HUDSON *v.* COZART.

**5. Same—Actions—Several Sellers—Dismissed as to Some—Appeal and Error—Objections and Exceptions.**

Where a contract to purchase is for the whole of the lands of several tenants in common, specific performance will not be decreed against them when the action has been dismissed as to some of them without exception or appeal by the plaintiffs.

**6. Contracts—Options—Tender in Part—Waiver—Consideration.**

Where an option, which has become a bilateral agreement to purchase land, is given upon consideration of a certain sum of money, and the erection by the purchaser of a redrying plant by a certain time, the time granted is for the benefit of the purchaser, which the seller may waive without affecting his rights to receive the full consideration.

CIVIL ACTION, tried before *Devin, J.,* and a jury, at October Term, 1919, of WILSON.

The action is to enforce the specific performance of a contract to convey a parcel or lot of land in the city of Wilson, pursuant to an option to purchase the same, contained in a written agreement executed by defendants to the plaintiff.

On the hearing, it was admitted that the said lot was owned by the five named defendants, the interest being as follows: one-third by S. W. Smith, one third by W. P. Anderson, one-sixth by U. H. Cozart, and one-twelfth each by Eagles and Carr. It further appeared that the defendants had executed the written agreement, and that no deed for the lot had been made. The defendant, S. W. Smith, made no answer to the complaint of plaintiff, duly verified, and the bill was taken *pro confesso* as to him. The four other defendants having joined issue, there being no evidence of a personal tender of the purchase price within the time required by the option on defendants, Eagles and Carr, the action, on motion, was dismissed as to these defendants, and, issues having been submitted as to the liability of U. H. Cozart and W. P. Anderson, the jury rendered verdict as follows:

"1. Did the defendants execute and deliver the contract, as alleged in the complaint? Answer: 'Yes.'

"2. Was the plaintiff at all times ready, able, and willing to comply with the provisions of the contract? Answer: 'Yes.'

"3. Did the plaintiff tender performance of the contract, prior to 15 March, 1916, to the defendants, Cozart and Anderson? Answer: 'Yes.' "

Judgment for specific performance as to these defendants, and, it appearing that said defendants are married men, and that their wives had not signed the written agreement conferring the option, the decree provided for a proportionate abatement of the purchase price unless the wives of said defendants should voluntarily join in the execution of the

deeds for the property.    Defendants, Anderson and Cozart, having duly excepted, appealed.

*F. S. Spruill and W. A. Finch for plaintiff.*
*H. G. Connor, Jr., and Wm. A. Lucas for defendants.*

HOKE, J.   On the trial it appeared that the five defendants named, owning a lot in the city of Wilson, on 31 January, 1916, entered into a written agreement, under seal, conferring on the plaintiff an option to buy the designated parcel of land, the portions of the agreement more directly relevant to the inquiry being as follows:

"And the said parties of the first part, plaintiffs, hereby contract and agree to execute and deliver to the said party of the second part, his heirs and assigns, at or upon his request, on the 15th day of March, 1916, a good and sufficient deed for the said tracts of parcels of land described above, with full covenants and warranty:   *Provided,* and upon condition, nevertheless, that the said party of the second part shall well and truly pay to the parties of the first part, their heirs and assigns, in cash, the sum of five thousand dollars on the said day of March, 1916, in good and lawful money, and being in full payment as the entire purchase money for aforesaid described lots or parcels of land, together with all appurtenances now situate on same.

"It is understood and agreed by the parties to these presents, that said sale is to be made at the option of the said party of the second part, and to be exercised on or before the 15th day of March, 1916, and it is further agreed that in case the said party of the second part does not demand of the parties of the first part, the deeds herein provided for as herein agreed and tender payment as set forth above, that on the 15th day of March, 1916, this agreement shall be null and void, and the parties of the first part, their heirs and assigns, shall be at liberty to dispose of the said lots or parcels of land in such a manner as if this contract had never been made, and neither the parties of the first part nor the party of the second part shall have any claim whatsoever on the other in either law or equity.

"It is also further agreed by the party of the second part, that he will erect upon the property described above a redrying plant, said plant to be erected by the opening of the tobacco market in the fall of 1916, and at the time of delivering said deed or deeds, should this option of purchase be exercised by the party of the second part, upon request of the parties of the first part, the party of the said part shall make such assurances in good faith that may be accepted by the parties of the first part as to the erection of the aforesaid redrying plant, that the deed or deeds may be properly delivered to the party of the second part, and the failure

on the part of the party of the second part to make unto the parties of the first part the assurances, as be reasonably required by them as to the use of the aforesaid lots or parcels of land, will render this agreement null and void, neither party having any recourse at law or equity."

The plaintiff, a witness in his own behalf, testified further on the issues: "That, on March 14th, one day before the last day of the option, I got a notary public, saw Mr. U. H. Cozart, one of the defendants, on the street, and told him I was ready to sign the deed; told him I had the money ready in the First National Bank. He said, wait and I will see Anderson, and refused to sign the deed. I met them, Anderson and Cozart, and they were talking. They were standing in front of the First National Bank, in which I had the money. Anderson said he was not going to sign the deed. Mr. Cozart went into the bank and saw Col. Bruton, I suppose, and refused to sign. I was ready, able, and willing to pay the money, and still am."

On this, the only oral evidence offered, the action having been dismissed as to Eagles and Carr, the jury rendered a verdict, as stated, against the defendants, Cozart and Anderson, and the court gave judgment that these defendants convey their interests on payment of their proportion of the purchase price, subject to abatement for their wives' interest in the property, and a similar judgment was entered against the defendant Smith, who had failed to answer, or in any way resist the recovery sought.

From a perusal of the agreement, it appears that this was an option conferred upon the plaintiff requiring an offer to perform within the time, and in this instance to include a tender of the purchase money at or before the execution of the deed. *Timber Co. v. Wells,* 171 N. C., 262; *Ward v. Albertson,* 165 N. C., 218; *Winders v. Kenan,* 161 N. C., 628; *Hardy v .Ward,* 150 N. C., 385; *Trogden v. Williams,* 144 N. C., 192. And plaintiff was also, if requested thereto, to give satisfactory assurance as to a redrying plant, which he was to build upon the property as a part of the consideration. Ordinarily, tenants in common, merely from that relationship, are not authorized to make agreements or receive notices substantially affecting the estate or interest of each other in the common property, but where, as in this instance, such tenants have entered into a joint and binding agreement conferring a purchase option on a third person, such an instrument will constitute one the agent for the other for the purposes of a tender, which will turn the agreement into a bilateral contract, and, in our opinion, this is assuredly true in regard to an agreement of the kind presented here, which, from its language and purport, clearly contemplates an indivisible contract to be performed in its entirety. Not only does this appear from the joint covenant to make title on the part of defendants, but also from

the consideration promised by the plaintiff, to wit, that he will pay $5,000 for the property, and erect thereon a redrying plant in time for the tobacco season of 1916, a stipulation which necessitated his holding a title to the entire property in order to its valid performance. *Wright v. Kaynor,* 150 Mich., 7; *In re Jeremiah P. Robinson,* 40 N. Y. Sup. Ct., 23; *Flanagan v. Seeyle,* 53 Minn., 23; *Baker & Brun, Admrs., v. Kellog et al.,* 29 Ohio St., 663; *Detlor et al. v. Holland,* 57 Ohio St., 492; *Carman v. Puet,* 21 N. Y., 547; *Dykman v. Mayor,* 5 N. Y., 434; *Blood v. Goodrich,* 9 Wendell, 68; *Dawson & Springer v. Ewing,* 31 Pa. St., 371; 38 Cyc., 106; 17 A. and E. Enc. (2d ed.), 672. In the *Michigan case, supra,* there was a lease by husband and wife, tenants in common, with an option to renew on notice. The wife having died, leaving heirs at law, notice as to renewal was served only on the husband, and the principal question was whether the heirs of the wife were bound. In the original opinion it was held that they were not bound, applying the general principles that one tenant in common could not ordinarily bind the others, but, on reargument, the decision was modified or changed in this respect, and it was held that notice to the husband was sufficient by reason of the joint agreement on the part of lessors. In delivering the prevailing opinion, *Carpenter, Judge,* said: "The lessors were joint contractors in this lease. Jointly they agreed to renew it, and to insert in said renewal an option whereby the lessee might purchase not their several but their joint interests. Between the lessors there was, therefore, the relationship of joint contractors as well as the relationship of tenants in common. Allen (the lessee), under these circumstances, could pay the rent to either, and either of them could discharge the obligation. Among joint obligees any one may receive satisfaction for the entire obligation and execute a valid discharge therefor. The remedy of other joint obligees is against him and not against the one who has made payment to him. 7 Amer. and Eng. Enc. Law (2 ed.), 102.

"In support of this text numerous authorities are cited, which fully sustain it. Though only one of these two joint contractors refused to convey, both would be liable for damages, for they have jointly agreed to convey the entire title. *Blood v. Goodrich,* 9 Wendell (N. Y.), 68. The principle underlying these decisions is, in my judgment, applicable to this case, and compels us to say that the notice given to defendant Ansel of Allen's election to renew the lease was binding upon Augusta and her estate, not because she was a cotenant, but because she was a cocontractor."

The plaintiff, then, having established a tender of the purchase price within the time as to two of these co-owners, has matured his claim under the option as to all, and the question recurs on his right to specific performance of the contract as a bilateral agreement. It is the recog-

nized principle that in order to relief, in actions of this character, it is required that plaintiff shall aver and prove performance or offer to perform, or a readiness and ability to carry out the contract on his own part.

In Pomeroy's Eq. Jurisprudence (3d ed.), sec. 1407, the position is stated as follows: "The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent to his obtaining the remedy, that he has done, or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commenceing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms."

A similar statement on the subject appears in Pomeroy on Contracts (Specific Performance), (2d ed.), sec. 323, and, speaking further to the subject, this author, in sec. 330, says: "The party seeking aid of the court, as actor, must not only show that he has complied with the terms so far as they can and ought to be complied with at the commencement of the suit, he must also show that he is able, ready, and willing to do those other acts which the contract stipulates for as a part of its specific performance."

Numerous cases here and elsewhere show this to be a correct statement of the doctrine. *Bird v. Bradburn,* 127 N. C., 411; *Mincey v. Foster,* 125 N. C., 541; *Bank of Columbia v. Hagner,* 26 U. S., 455. And, in our opinion, its proper application to the facts presented is against plaintiff's right to relief by specific performance. This, as we have seen, is a contract by which defendants agree to sell and convey to plaintiff the lot in question, and plaintiff on his part is to pay $5,000 at or before the execution of the deed, and to build upon the lot a redrying plant. This, while it is to be done after the execution of the deed, is a part of the consideration that plaintiff is to pay for the lot, and, under the principle referred to, he is required to aver and show that he is ready and willing to carry out this part of the contract also. Not only is there no averment or proof to this effect, but a perusal of the complaint will disclose that plaintiff does not intend to comply with this feature of the agreement, and does not consider that he is any longer under obligation in this respect. Both in his allegations and proof, therefore, he has failed to show that he is ready and willing to perform the stipulations of the agreement.

Again, so far as the title is concerned, this is a contract indivisible in its nature and to be performed in its entirety, and specific performance may not be enforced partially nor as to its separate provisions. This position was adverted to with approval by *Associate Justice Connor,* in

*Tillery v. Land Co.,* 136 N. C., 537-543, and is in accord with the authoritative decisions on the subject. *Tillery v. Land Co.; Telfener v. Russ,* 162 U. S., 170; *Welty v. Jacobs,* 171 Ill., 624; *Baldwin, Admr., v. Fletcher,* 48 Mich., 604; *Combs v. Little,* 4 N. J. Eq., 310. In the *Michigan case, supra,* the principle is stated as follows: "A bill will not lie for the specific performance of particular stipulations to be separated and dealt with apart from the rest of the contract if they do not appear to stand by themselves, wholly unaffected by the others. A party to a contract who insists upon parts of it must abide by it in its entirety."

Under the terms of this instrument, as a bilateral agreement, plaintiff is not to acquire title to this property on the payment of $5,000, but he is to pay this amount, and also build on the lot a redrying plant. This last is as much a part of the consideration as the other, and, in order to its proper performance, it is necessary for plaintiff to have the entire ownership of the lot or to establish a binding agreement by which such ownership may be acquired. On perusal of the record, it appears that the court below, on motion, has dismissed the action as to two of the defendants, Eagles and Carr. This may have been an erroneous ruling on the part of his Honor, but it stands until it is in some way modified or reversed, and plaintiff has neither appealed nor excepted. He is, therefore, no longer in a position to carry out his part of the contract nor pay the consideration promised by him.

We are not inadvertent to the fact that the redrying plant was to have been built in time for the tobacco market of 1916. This requirement as to time, however, was inserted for the benefit of defendants, which could be waived by them, and has been waived by their failure to execute the conveyance, but the construction of the redrying plant has not been waived as a part of the consideration to be paid for the property, and plaintiff, who seeks to enforce specific performance of the contract, must, as stated, allege and prove that he is ready and willing to comply with its terms. This he has failed to do, and, in our opinion, the action must be dismissed also as to appellants, Cozart and Anderson, The defendant Smith having failed to answer or except, is bound by the judgment, and must comply with its terms.

Reversed.