GREGORY SZYMCZYK and DIANE SZYMCZYK, Plaintiffs v. SIGNS NOW CORPORATION, Defendant

No. COA04-41

(Filed 18 January 2005)

**1. Arbitration and Mediation— Florida franchise agreement—interstate commerce**

The trial court improperly enjoined a forum selection clause requiring arbitration of a franchise agreement in Florida where the contacts between the plaintiffs in North Carolina and the defendant in Florida were sufficient to establish interstate commerce, so that the Federal Arbitration Act governed rather than our state arbitration statutes. Morever, even if there was no interstate commerce, the contract was formed in Florida.

**2. Jurisdiction— forum selection clause—Florida contract**

N.C.G.S. § 22B-3 (which prohibits forum selections clauses which contravene the public policy of North Carolina) applies to contracts entered into in North Carolina. In this case, the last signature was defendant's, in Florida, and the statute does not apply.

**3. Injunction— preliminary—covenant not to compete— Florida contract**

The trial court erred by granting a preliminary injunction to enforce a covenant not to compete on the ground that it was unreasonable. The clause was enforceable under Florida law, which governed the contract.

**4. Injunctions— preliminary—Florida action halted—not justified**

Reversal of a North Carolina preliminary injunction halting a Florida action was proper where the case dealt with North Carolina plaintiffs and a Florida defendant, a Florida contract, and forum selection issues. Plaintiffs did not show irreparable harm and the case did not present the clear equity justifying the use of extraordinary power.

Appeal by defendant from an order entered 7 August 2003 by Judge Milton F. Fitch, Jr. in Wilson County Superior Court. Heard in the Court of Appeals 19 October 2004.

**SZYMCZYK v. SIGNS NOW CORP.**

[168 N.C. App. 182 (2005)]

*Battle, Winslow, Scott & Wiley, P.A., by Marshall A. Gallop, Jr.; Thomas and Farris, P.A., by Albert S. Thomas, Jr., for plaintiff-appellees.*

*Helms Mulliss & Wicker, P.L.L.C., by Robert H. Tiller and Corby C. Anderson, for defendant-appellant.*

HUNTER, Judge.

Signs Now Corporation ("defendant") appeals from a preliminary injunction enjoining arbitration and a civil action from proceeding in a Florida court. As we find such injunctions were improperly entered, we reverse the trial court for the following reasons.

In November 1993, Gregory and Diane Szymczyk ("plaintiffs") entered into a twenty-year franchise agreement with defendant to operate a Signs Now store in Wilson, North Carolina.

The contract specified several terms with regards to subsequent legal action. First, the contract provided that claims related to the franchise agreement would be subject to arbitration by the American Arbitration Association under the Federal Arbitration Act, prior to the commencement of legal action by either party. The contract contained an exception to the general requirement of arbitration for one of the terms of the agreement, permitting claims for injunctive relief relating to the covenant not to compete. The contract contained a choice of law provision, specifying Florida as the governing law. Finally, the contract agreed that the venue for any claims arising by virtue of the franchise relationship would be Manatee County, Florida.

Plaintiffs operated their franchise store in Wilson, North Carolina, until 2003 under the terms of the franchise agreement. During that time, plaintiffs received operations manuals, training materials, and support and assistance via telephone from defendant in Florida. Plaintiff sent royalty checks to defendant in Florida and attended two of defendant's annual conventions in Florida.

In 2003, plaintiffs contacted defendant to inform them plaintiffs were transferring their store to satisfy a debt, and would no longer be operating the business. Plaintiffs continued to operate a sign shop at the same location, first under the name "Signs Wow," and then under the name "Sign Solutions." Defendant notified plaintiffs they were in violation of the franchise agreement on 7 February 2003, but plaintiffs continued operation of the store.

Defendant filed a demand for arbitration in Florida against plaintiffs in June 2003, as well as a complaint in Manatee County, Florida, seeking injunctive relief for violation of the covenant not to compete. Plaintiffs responded by filing a complaint for breach of the franchise agreement and a motion for a temporary restraining order in Wilson County, North Carolina, on 16 July 2003, enjoining defendants from proceeding with arbitration. The order was granted. Plaintiffs later amended their complaint to seek an injunction to prohibit enforcement of the covenant not to compete. On 7 August 2003, the Wilson County trial court granted a preliminary injunction preventing defendant from proceeding with arbitration and the pending civil action in Florida. The trial court, in the same order, permitted plaintiffs' claims to move forward and allowed arbitration on those claims in North Carolina.[1] Defendant appeals.

I.

**[1]** Defendant first contends that the trial court erred in issuing a preliminary injunction prohibiting defendant from proceeding with an arbitration in Florida. We agree.

We first note the considerations for issuance of a preliminary injunction:

> "[A] preliminary injunction is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation."

*Redlee/SCS, Inc. v. Pieper*, 153 N.C. App. 421, 423, 571 S.E.2d 8, 11 (2002) (quoting *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983)). On appellate review of a preliminary injunction, this Court is not bound by the trial court's findings of fact. Rather, the appellate court reviews the evidence *de novo* and makes its own findings of fact and conclusions of law. *See Jeffery R. Kennedy, D.D.S., P.A. v. Kennedy*, 160 N.C. App. 1, 8, 584 S.E.2d 328, 333, *appeal dismissed*, 357 N.C. 658, 590 S.E.2d 267 (2003).

---

1. We note that under the terms of the trial court's order, both parties were directed to pursue arbitration within ten days or proceed with litigation on plaintiff's claims. Defendant filed for arbitration in North Carolina pursuant to that order. Neither party moved for a stay from this Court or the trial court as to this arbitration while the appeal was pending, and the arbitration has proceeded as to those issues. We note, however, that the arbitration at the time of hearing was incomplete.

N.C. Gen. Stat. § 22B-3 provides that a forum selection clause which requires prosecution or arbitration in another state, when entered into in North Carolina, is against public policy and is void and unenforceable. *Id.* However, plaintiffs concede in their brief that if the Federal Arbitration Act ("FAA") applies, the law of the state of North Carolina is preempted with respect to the applicability of N.C. Gen. Stat. § 22B-3, on which basis the trial court granted the preliminary injunction enjoining arbitration. *See Boynton v. ESC Med. Sys., Inc.*, 152 N.C. App. 103, 109, 566 S.E.2d 730, 734 (2002). The application of the FAA in this case turns on whether the transaction involved interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277-81, 130 L. Ed. 2d 753, 766-69 (1995) (holding that the FAA applies when a contract evidences a transaction involving commerce in fact). This Court has previously noted that:

"[A]ll interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons or information, is a transaction of interstate commerce."

*Snelling & Snelling v. Watson*, 41 N.C. App. 193, 197-98, 254 S.E.2d 785, 789 (1979) (citations omitted). *Snelling* involved a franchise agreement in which the licensor provided the licensee, among other things, training manuals, advice, and use of a carefully regulated service mark. *Id.* at 201-02, 254 S.E.2d at 791. The Court found all of these factors to provide evidence of interstate commerce. *Id.* at 204, 254 S.E.2d at 793.

Here, the record shows that plaintiffs and defendant entered into a franchise agreement in which defendant provided support to plaintiffs in the form of manuals, training, and advice via telephone, as well as the use of a specific name and trademark. Further, plaintiffs routinely transmitted payments in the form of bank drafts from North Carolina to Florida. Finally, there is evidence that plaintiffs twice traveled to Florida to attend defendant's annual convention, which provided additional training. Such contacts were sufficient to establish the franchise agreement as interstate commerce, and the FAA therefore properly governs the franchise agreement, rather than our state's arbitration statutes. *See Boynton*, 152 N.C. App. at 109, 566 S.E.2d at 734. Thus, under the FAA, the franchise agreement's provision requiring arbitration in Florida should have been

enforced. However, even if there was no interstate commerce and the FAA did not preempt N.C. Gen. Stat. § 22B-3, we note the arbitration forum selection clause would not be void as the contract was formed in Florida, as discussed *infra* in Section II. Therefore, we find the trial court improperly granted the preliminary injunction enjoining the arbitration.

## II.

**[2]** Defendant next contends the trial court erred in enjoining defendant from seeking to enforce a covenant not to compete against plaintiffs through a civil action in Florida. We agree.

"In general, a court interprets a contract according to the intent of the parties to the contract." *Cable Tel Servs., Inc. v. Overland Contr'g., Inc.*, 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002). Further, the Supreme Court of North Carolina has held that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *See Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). Here, the parties specifically agreed in the terms of the contract that the laws of the State of Florida would govern the agreement.

Under certain circumstances, however, North Carolina courts will not honor a choice of law provision, such as when

"application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of applicable law in the absence of an effective choice of law by the parties."

*Cable Tel Servs., Inc.*, 154 N.C. App. at 643, 574 S.E.2d at 34 (citations omitted). Here, plaintiffs argue that N.C. Gen. Stat. § 22B-3 prohibits forum selection clauses as contravening the strong public policy of North Carolina, and therefore the forum selection clause in the franchise agreement is void and unenforceable.[2]

---

2. Although we find N.C. Gen. Stat. § 22B-3 inapplicable to this contract based on the reasoning *infra*, we note that this statute, passed in 1993, specifically overrules the holding in *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 423 S.E.2d 780 (1992), which held that forum selection clauses were valid in North Carolina, although this case has continued to be cited by this Court in determining the validity of forum selection clauses formed in this state.

However, N.C. Gen. Stat. § 22B-3 (2003) specifies that it applies to "any provision in a contract entered into *in North Carolina*[.]" *Id.* (emphasis added). Although this question has not been directly addressed by our courts, we find the reasoning in *Key Motorsports v. Speedvision Network, L.L.C.*, 40 F. Supp. 2d 344 (M.D.N.C. 1999), regarding the applicability of N.C. Gen. Stat. § 22B-3 to out of state contracts, to be persuasive. In *Key*, a contract with a forum selection clause was formed in Connecticut and the court found that enforcement of the forum selection clause would not violate North Carolina public policy, as the "provision is limited to contracts 'entered into in North Carolina.' " *Key*, 40 F. Supp. 2d at 349. The threshold question for determining if the contact's forum selection clause violates North Carolina law, therefore, is a determination of where the instant contract was formed.

It is well-accepted that

"the test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of minds. Until this act was done there was no contract, and upon its being done at a given place, the contract became existent at the place where the act was done. Until then there was no contract."

*Bundy v. Commercial Credit Co.*, 200 N.C. 511, 515, 157 S.E. 860, 862 (1931) (citations omitted). In *Bundy*, a contract negotiated by the North Carolina office of a Maryland company was not deemed existent until the final signature was made by the company's officers in Maryland. *Id.* at 514-15, 157 S.E. at 862.

Here, the terms of the franchise agreement were discussed with representatives of defendant and a form agreement was signed by plaintiffs in North Carolina. The contract was then returned to Florida and defendant's president signed the agreement. Just as in *Bundy*, the last act of signing the contract was an essential element to formation. As the contract was formed in Florida, N.C. Gen. Stat. § 22B-3 does not apply to the forum selection clause in the instant agreement.

[3] Plaintiffs allege further that the forum selection clause should not be honored as it is unreasonable. As the interpretation of a contract is governed by the law of the place where the contract was made, we apply Florida law to address the validity of the forum selection clause. *See Land Co.*, 299 N.C. at 262, 261 S.E.2d at 656 (holding the provisions of the contract as to choice of law govern interpretation of the validity of the contract).

Under Florida law, forum-selection clauses have been met with approval. *See Manrique v. Fabbri*, 493 So.2d 437, 440 (Fla. 1986) (holding forum selection clauses enforceable in the absence of a showing that enforcement would be unreasonable or unjust). Further, plaintiffs bear the burden of showing that the enforcement of the forum selection clause is unreasonable or unjust. *See Swarovski N. Am., Ltd. v. House of China, Crystal & Silver, Inc.*, 848 So.2d 452, 453 (Fla. 2003) (holding "unambiguous mandatory forum selection clauses contained in contract documents are presumptively valid and should be enforced in the absence of a showing that enforcement would be unreasonable or unjust"); *Kanner v. Pan American Assistance, Inc.*, 807 So.2d 80, 82 (Fla. 2001) (noting the test of unreasonableness is not mere inconvenience or additional expense).

Here, plaintiffs contend that the mere fact that they were a small family business confronted by a lengthy form contract renders the contract unenforceable. However the forum selection clause is clearly identified in the text of the contract and the franchisee is admonished to seek legal counsel to facilitate understanding of the terms of the agreement, which offers benefits and liabilities for both parties. Further, plaintiffs had nearly a month to contemplate the terms of the franchise agreement, receiving the offer in October of 1993 and signing the contract on 19 November 1993. As plaintiffs fail to show why recognizing the legitimate expectations of the parties as agreed to in the terms of the contract would be unreasonable or unjust, the forum selection clause would be enforceable under Florida law. *See Manrique*, 493 So.2d at 440. Therefore the trial court erred in granting a preliminary injunction as to defendant's action to enforce the covenant not to compete.

### III.

[4] Defendant finally contends the trial court erred in granting a preliminary injunction to plaintiffs when they failed to show irreparable harm. As the trial court's grant of a preliminary injunction as to pending arbitration in Florida and a civil action to enforce a covenant not to compete were in error, it is unnecessary to reach defendant's remaining assignment of error.

However, a brief review of defendant's contentions further substantiates reversal of the trial court's grant of preliminary injunctions. Defendant contends that the issuance of such preliminary injunctions enjoining actions in another state were improper.

SZYMCZYK v. SIGNS NOW CORP.

[168 N.C. App. 182 (2005)]

[I]t is well established that "a court . . . which has acquired jurisdiction of the parties, has power, on proper cause shown, to enjoin them from proceeding with an action in another state . . . , particularly where such parties are citizens or residents of the state, or with respect to a controversy between the same parties of which it obtained jurisdiction prior to the foreign court."

However, the rule is that this power of the court should be exercised sparingly, and only where "a clear equity is presented requiring the interposition of the court to prevent manifest wrong and injustice."

*Childress v. Motor Lines*, 235 N.C. 522, 531, 70 S.E.2d 558, 564-65 (1952) (citations omitted). Here, defendants are neither citizens nor residents of the state and the North Carolina court did not obtain jurisdiction prior to the foreign court. Nor have plaintiffs demonstrated "manifest wrong and injustice" by defendant's proceedings in Florida's courts. *Id.* at 531, 70 S.E.2d at 565. Therefore as this case fails to present the clear equity which justifies the use of such extraordinary power by our trial courts, reversal of the preliminary injunctions is proper in this case.

Further, the extraordinary measure of a preliminary injunction to preserve the status quo is only to be taken when the moving party can show irreparable loss is likely unless the injunction is issued. *Redlee/SCS, Inc.*, 153 N.C. App. at 423, 571 S.E.2d at 11. Here, plaintiff fails to make a showing of likely irreparable harm unless the injunction is issued, alleging no harm from such proceedings in plaintiffs' deposition. Thus, the failure to show irreparable harm further invalidates the grant of such an injunction.

For the reasons stated herein, the trial court erred in issuing preliminary injunctions enjoining defendants from proceeding with enforcement of the contractual agreement in Florida.

Reversed.

Judges WYNN and THORNBURG concur.

Judge Thornburg concurred in this opinion prior to 31 December 2004.