MAP SUPPLY, INC. Plaintiff,
v.
INTEGRATED INVENTORY SOLUTIONS, LLC a/k/a INxSQL Defendant.
No. COA07-733
Court of Appeals of North Carolina
Filed May 20, 2008
This case not for publication
Sparrow Wolf & Dennis, P.A., by Donald G. Sparrow and James A. Gregorio, for plaintiff appellant.
Womble Carlyle Sandridge & Rice, PLLC, by James R. Morgan, Jr., and Craig D. Cannon, for defendant appellee.
McCULLOUGH, Judge.

FACTS
Leonard S. Kay, owner of Inventory Solutions, LLC, worked as an independent sales agent for Integrated Inventory Solutions, LLC ("IIS"), a Michigan corporation with offices in Waterford, Michigan. After learning that Map Supply, Inc. ("MSI"), a North Carolina corporation, might be interested in purchasing INxSQL software from IIS, Mr. Kay contacted Jennifer Gaddy, an employee of MSI, and arranged to meet with her at the MSI offices in Welcome, North Carolina. After receiving confirmation that IIS was interested in purchasing the software, Mr. Kay drafted a purchase and licensing agreement ("the contract") and sent it to Ms. Gaddy. Mr. Kay returned to MSI's offices on 31 August 2004 and met with Albert Cleveland, the President of MSI. During this meeting, Mr. Cleveland detailed MSI's operation and discussed the company's needs. At the close of the meeting, Mr. Kay presented Mr. Cleveland with a copy of the contract. The contract outlined the terms of the agreement between the two parties and provided a signature line for an authorized representative from each party. Among the terms contained in the contract was a choice-of-law provision providing that the laws of the State of Michigan would be used to interpret the agreement. The contract also contained a forum-selection clause stating that "Any action arising from this Agreement shall be maintained in the courts of the State of Michigan." Mr. Cleveland signed the contract on behalf of MSI and returned the contract to Mr. Kay. Mr. Cleveland also provided Mr. Kay with a check in the amount of $1,000 as a deposit. Mr. Kay then sent the contract, along with the deposit check from MSI, to the IIS offices in Oak Park, Michigan, to have the contract signed by Robert J. Reynolds, the company's president. Mr. Reynolds received the contract at the IIS offices in Oak Park, Michigan, and signed the document on behalf of IIS.
On 5 April 2006, MSI ("plaintiff") filed a complaint against IIS ("defendant") arising from the contract between the two parties. In response, IIS filed a motion to dismiss MSI's complaint on 7 June 2006. Defendant argued that pursuant to the language in the agreement between the parties, all disputes arising from the contract were to be brought in the courts of the State of Michigan. The trial court granted defendant's motion in an order entered 8 December 2006. This order dismissed plaintiff's action with prejudice but noted that the order "[was] not intended to prohibit plaintiff from initiating an action against defendant in the State of Michigan." On 22 December 2006, plaintiff appealed.

I.
Plaintiff argues the trial court erred by enforcing the forum-selection clause contained in the contract between the parties and dismissing the complaint. We disagree.
Generally, this Court will interpret a contract in accordance with the intent of the parties to the contract.Cable Tel Servs., Inc. v. Overland Contr'g., Inc., 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002). When interpreting a contract, "'the law of the place where the contract is made is prima facie that which the parties intended, or ought to be presumed to have adopted, as the footing upon which they dealt, and that such law ought, therefore, to prevail, in the absence of circumstances indicating a different intention.'" Cannaday v. R.R., 143 N.C. 439, 442, 55 S.E. 836, 837 (1927) (citation omitted). "[W]here parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." Land Co. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). However, a choice of law provision in a contract will not be enforced when
"application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of applicable law in the absence of an effective choice of law by the parties."
Szymczyk v. Signs Now Corp., 168 N.C. App. 182, 186, 606 S.E.2d 728, 732 (2005) (quotingCable Tel Servs., Inc., 154 N.C. App. at 643, 574 S.E.2d at 34).
Here, the contract between the parties contained a choice-of-law provision providing that the contract would be interpreted under the laws of the State of Michigan. Thus, in making the determination of whether the forum-selection clause contained in the contract is valid, we will apply Michigan law. See Szymczyk, 168 N.C. App. at 187, 606 S.E.2d at 733.
Michigan law provides that "a contract must be construed so as to effectuate the intent of the parties when it was made[.]" Kunzie v. Nibbelink, 199 Mich. 308, 314, 165 N.W. 722, 724 (1917). "Once discerned, the intent of the parties will be enforced unless it is contrary to public policy."Quality Products v. Nagel Precision, 469 Mich. 362, 375, 666 N.W.2d 251, 259, reh'g denied, 469 Mich. 1224, 669 N.W.2d 812 (2003). According to the Court of Appeals of Michigan: "It is undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions."Turcheck v. Amerifund Financial, 272 Mich. App. 341, 345, 725 N.W.2d 684, 688 (2006). Therefore, unless an exception is provided by statute, "Michigan courts will enforce a forum-selection clause as written[,]" and "[any] party seeking to avoid a contractual forum-selection clausebears a heavy burden of showing that the clause should not be enforced." Id. at 348, 725 N.W.2d at 689.
Upon review, we hold the forum-selection clause in the case sub judice to be valid and enforceable under Michigan law. It is plaintiff's contention, however, that North Carolina law, and not Michigan law, should govern our interpretation of the forum- selection clause. According to plaintiff, the contract was made in North Carolina, and thus the inclusion of a forum-selection clause designating a forum other than North Carolina would violate North Carolina public policy. We are unpersuaded by plaintiff's argument. N.C. Gen. Stat. § 22B-3 (2007) provides:
Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises.
We have previously held that N.C. Gen. Stat. § 22B-3 is limited to contracts "'entered into in North Carolina.'" Szymczyk, 168 N.C. App. at 187, 606 S.E.2d at 733 (citation omitted). Thus, "[t]he threshold question for determining if the cont[r]act's forum selection clause violates North Carolina law ... is a determination of where the instant contract was formed." Id. "[A] contract is made in the place where the last act necessary to make it binding occurred."Tom Togs, Inc. v. Ben Elias Industries Corp., 318 N.C. 361, 365, 348 S.E.2d 782, 785 (1986). Until this act has been performed, no contract exists between the parties. Bundy v. Commercial Credit Co., 200 N.C. 511, 515, 157 S.E. 860, 862 (1931).
Although the contract in question called for the signature of an authorized representative from each party, plaintiff contends the final act necessary to make it binding occurred when plaintiff signed the draft contract provided by defendant's agent. Therefore, plaintiff argues, the contract was formed in North Carolina. From our analysis of the applicable case law, we note that this Court was presented with a similar issue in the case of Szymczyk, 168 N.C. App. at 183, 606 S.E.2d at 730-31. In Szymczyk, two North Carolina franchisees entered into a franchise contract with a franchisor corporation located in Florida. Id. Representatives from the two sides met in North Carolina, and after discussing the terms of the agreement the franchisees signed a form contract provided by the franchisor. Id. at 187, 606 S.E.2d at 733. The franchise contract signed by the franchisees contained a forum-selection clause providing that all actions arising under the contract would be brought in the State of Florida. Id. at 183, 606 S.E.2d at 730. The franchise contract was then sent to Florida, where it was signed by the president of the franchisor. Id. at 187, 606 S.E.2d at 733. On appeal, the franchisees argued that the forum-selection clause contained in the franchise contract was invalid because it was prohibited by N.C. Gen. Stat. § 22B-3. Szymczyk, 168 N.C. App. at 186, 606 S.E.2d at 732. Consequently,the initial question before this Court was where the franchise contract had been formed. Id. at 187, 606 S.E.2d at 733. After reviewing the actions of the parties, this Court determined that "the last act of signing the contract was an essential element to formation[,]" and thus, the contract between the parties had been formed in Florida. Id. As a result, theSzymczyk Court held the forum-selection clause contained in the franchise contract was not prohibited by N.C. Gen. Stat. § 22B-3 and should be enforced. Szymczyk, 168 N.C. App. at 187-88, 606 S.E.2d at 733-34.
In the case at bar, a representative of defendant traveled to North Carolina to discuss the terms of the contract with plaintiff. After the two parties reached an agreement, defendant's representative provided a contract which plaintiff signed. Defendant's representative then sent this contract to defendant's offices in Michigan, where defendant's president signed the contract. Following the reasoning articulated in Szymczyk, we hold the contract was not formed until the final signature was procured in Michigan. See id. at 187, 606 S.E.2d at 733. Thus, the contract is properly deemed to have been created in Michigan, and N.C. Gen. Stat. § 22B-3 does not apply. Accordingly, the contract, which was formed in Michigan, should be governed by Michigan law and the forum-selection clause should be enforced. Therefore, we hold the trial court did not err by dismissing plaintiff's complaint.
Affirmed.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).